UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

INDUSTRIAL ACCESS INC.,

                            Plaintiff,

    v.

PRAETORIAN HOLDINGS
GROUP LLC,

                        Defendant.

---

1:22-CV-626 JLS (MJR)

REPORT AND
RECOMMENDATION

This case has been referred to the undersigned pursuant to Section 636(b)(1) of Title 28 of the United States Code, by the Honorable John L. Sinatra, Jr. (Dkt. No. 16) Before the Court is defendant's motion to compel arbitration and to dismiss the complaint, or, in the alternative, to stay the lawsuit pending completion of the arbitration proceeding. (Dkt. No. 8) Also before the Court is plaintiff's cross-motion for a preliminary injunction to prevent the arbitration from proceeding. (Dkt. No. 12) For the following reasons, it is recommended that defendant's motion to compel arbitration and to dismiss and/or stay the lawsuit be denied, and that plaintiff's motion for a preliminary injunction enjoining the arbitration be granted.

## **FACTS AND BACKGROUND**

On August 19, 2022, plaintiff Industrial Access, Inc. ("IA") filed a complaint against defendant Praetorian Holdings Group ("PHG") seeking breach of contract damages, a declaratory judgment, a preliminary as well as permanent injunction, and various other

types of relief.[1] (Dkt. No. 1) It is alleged that on or about September 27, 2021, plaintiff and defendant entered into an agreement entitled the "Disassembly and Removal Agreement for Decommissioned Wind Turbine Components between Praetorian Holdings Group, LLC and Industrial Access, Inc. for the Cohocton and Steel Winds Repowering Project (the "Agreement"). (Dkt. No 1; Exh. A) Pursuant to the Agreement, PHG hired IA to dissemble and remove wind turbine generators as part of two large projects to upgrade wind power facilities throughout Erie County and Steuben County, New York. (*Id*. at ¶15) IA alleges that PHG failed to manage and adequately prepare job sites in accordance with the parties' Agreement, resulting in substantial delays and additional costs to IA. (*Id*. at ¶¶18-19) IA alleges, for example, that over the course of at least 18 days between November 3 and December 9, 2021, IA arrived at job sites to find that PHG failed to properly shut down certain wind turbine generators; failed to properly maintain access roads; and did not adequately prepare equipment needed by IA to perform the work described in the Agreement. (*Id*.) In each instance, IA incurred costs related to additional labor and equipment rental. (*Id*.) IA alleges that it timely completed the project, in accordance with the Agreement, with the understanding that it would be compensated for the delays caused by PHG. (*Id*. at ¶4) IA alleges that PHG failed to fully compensate IA under the terms of the Agreement. (*Id*.) IA then proceeded to file a number of mechanic's liens against PHG. (*Id*.)

---

[1] The complaint alleges that the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 since plaintiff is a Georgia corporation and defendant is an Ohio limited liability company and the amount in controversy exceeds $75,000. (Dkt. No. 1) Plaintiff also alleges that federal jurisdiction is appropriate under 28 U.S.C. § 2201, since plaintiff seeks declaratory relief as well as a preliminary and permanent injunction. (*Id*.)

The complaint indicates that on or about July 26, 2022, PHG filed a Demand for Arbitration, seeking to resolve the instant contractual dispute with IA in an arbitration proceeding before the American Arbitration Association ("AAA"). (*Id.* at ¶22; Exh. B) PHG did not seek or obtain IA's agreement or consent to arbitrate the dispute before filing the arbitration demand. (*Id.*) Article 10 of the Agreement states as follows:

> Disputes between the Parties shall be resolved in accordance with the terms of this contract and where thereunder the Parties refer matters to arbitration, the location of such proceedings shall be Cleveland, Ohio according to the rules established by the American Arbitration Association.

(Dkt. No. 1; Exh. A) IA alleges that Article 10 of the Agreement does not require the arbitration of disputes. (*Id.* at ¶21) IA further alleges that it never consented to the arbitration of this dispute and that it continues to oppose the arbitration of the instant dispute, or any other dispute, with PHG. (*Id.*)

According to the complaint, IA now seeks a judgment declaring that the Agreement requires the consent of both parties to resolve the instant dispute through arbitration. (*Id.* at ¶¶25-26) IA also seeks an injunction restraining PHG from pursing this dispute, or any other dispute, with IA in arbitration, and requiring PHG to dismiss the current arbitration claim pending against IA. (*Id.* at ¶27-31) IA's other causes of action, which seek monetary damages based on PHG's alleged failure to compensate IA pursuant to the Agreement, include breach of contract, unjust enrichment, and quantum meruit. (*Id.* at ¶¶32-59)

On September 20, 2022, PHG filed a motion seeking to compel IA to arbitrate all claims alleged in the complaint. (Dkt. Nos. 8, 9) PHG further moved to dismiss IA's complaint in favor of arbitration pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, to stay the lawsuit pending resolution of the arbitration proceeding. (*Id.*) On November 18, 2022, IA filed a response in opposition to PHG's motion to compel

3

arbitration and to dismiss and/or stay the lawsuit. (Dkt. No. 12) IA also cross-moved for a preliminary injunction enjoining PHG from pursuing any arbitration claims with respect to IA before the AAA. (*Id.*)

On November 1, 2022, PHG filed a reply in further support of its motion to compel arbitration and to dismiss and/or stay the lawsuit. (Dkt. No. 20) PHG filed a response in opposition to IA's motion for a preliminary injunction on November 11, 2022. (Dkt. No. 22) On November 18, 2022, IA filed a reply in further support of its motion for a preliminary injunction. (Dkt. No. 23) The Court heard oral argument on November 22, 2022, at the conclusion of which it asked both parties for supplemental briefing. (Dkt. No. 24) PHG and IA filed supplemental briefs on December 16, 2022 (Dkt. Nos. 26, 27) and responses on January 6, 2022 (Dkt. Nos. 28, 29).[2]

## DISCUSSION

### MOTION TO COMPEL ARBITRATION AND DISMISS THE COMPLAINT

#### Applicable Legal Standard

The Federal Arbitration Act ("FAA") provides that "[a] written provision in...a...contract...to settle by arbitration a controversy thereby arising out of [the] contract...shall be valid, irrevocable and enforceable." 9 U.S.C. § 2. Pursuant to this statutory requirement, parties can seek to compel arbitration by petitioning a federal district court for an order directing that arbitration proceed in the manner provided for in their agreement. 9 U.S.C. § 4. In deciding motions to compel arbitration under the FAA, courts apply a "standard similar to that applicable for a motion for summary judgment",

---

[2] Together with its supplemental response filed on January 6, 2023, PHG included a declaration by Matthew R. Bahnij, Chief Executive Office of PHG. (Dkt. No 29-1) On January 12, 2023, IA filed a request to strike the Bahnij declaration as untimely, inadmissible, and irrelevant. (Dkt. No. 30) PHG filed a response to IA's request to strike on January 18, 2023. (Dkt. No. 33)

4

*Bensadoun v. Jobe-Riat*, 316 F.3d 171 (2d Cir. 2003), which requires consideration of "all relevant, admissible evidence submitted by the parties and contained in the pleadings, depositions, answers to interrogatories, and admissions on file, together with…affidavits." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220 (2d Cir. 2015); *quoting Chamber v. Time Warner, Inc.*, 282 F.3d 147, 155 (2d Cir. 22). Just as it does when evaluating a typical summary judgment motion, the court must "draw all reasonable inferences in favor of the non-moving party." *Nicosia*, 834 F.3d at 228.

According to the FAA and relevant case law, if, after considering the relevant evidence, the court finds that there is an issue of fact as to the making of the agreement for arbitration, then a trial is necessary. *Bensadoun*, 316 F.3d at 175; *accord* 9 U.S.C. § 4. However, "where the undisputed facts in the record require the matter of arbitrability to be decided against one side or the other as a matter of law, [the court] may rule on the basis of that legal issue and avoid the need for further court proceedings." *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund Ltd.*, 661 F.3d 164 (2d Cir. 2011) (internal quotations and citations omitted).[3]

---

[3] Here, PHG has moved both to compel arbitration under the FAA and to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), on the grounds that IA's failure to comply with the purported mandatory arbitration clause in the Agreement means that IA has failed to state a claim. *See Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 231 (2d Cir. 2016) ([W]hen it is apparent—on the face of the complaint and documents properly incorporated therein—that claims are subject to arbitration, a district court may dismiss in favor of arbitration[.]") Because the success of PHG's motion to dismiss is dependent on whether PHG can compel IA to arbitrate the claims at issue in the complaint, the Court will analyze PHG's entire motion pursuant to the standard utilized for determining a motion to compel arbitration under the FAA. *See Begonja v. Vornado Realty Trust*, 159 F. Supp. 3d 402 (S.D.N.Y. 2016). *See Wabtec Corp. v. Faiveley Trans. Malmo AB*, 525 F.3d 135, 140 (2d Cir. 2008) (a motion to dismiss may be construed as a motion to compel arbitration); *Santos v. GE Capital*, 397 F. Supp. 2d 350, 353 (D. Conn. 2005) ("When a motion to dismiss is premised upon a request to compel arbitration…the Court applies a standard similar to that applicable for a motion for summary judgment.") (internal citations and quotations omitted).

*Position of the Parties*

When deciding whether a motion to compel arbitration should be granted, a court must first determine whether a valid agreement to arbitrate exists between the parties and, if so, whether the particular dispute sought to be arbitrated falls within the scope of the arbitration provision. *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840 (2d Cir. 1987); *JLM Indus., Inc. v. Stolt-Nielsen*, 387 F.3d 163, 169 (2d Cir. 2004). Here, PHG maintains that Article 10 of the Agreement is a mandatory arbitration provision which *requires* that *all* disputes arising from the Agreement be submitted to arbitration, and which allows either party to unilaterally refer a dispute to arbitration. PHG argues, therefore, that IA is bound to resolve the instant dispute through arbitration. Conversely, it is IA's position that Article 10 *permits* disputes arising under the Agreement to proceed to arbitration *only* upon the *consent* of both parties. Further, IA did not and does not agree to resolve the instant dispute through arbitration. Thus, the Court is presented with a threshold disagreement as to whether a mandatory and enforceable agreement to arbitrate exists between PHG and IA.

Before reaching the merits of the parties' positions, however, the Court must first determine whether it should resolve the dispute at all. PHG maintains that issues of arbitrability are to be determined by an arbitrator and not the Court. Stated another way, PHG argues that it is the arbitrator who must make the threshold determination here as to whether PHG and IA are required to arbitrate this dispute under the Agreement. IA submits, however, that because there is a question or dispute as to whether an agreement to arbitrate exists in the first place, it is the Court, and not the arbitrator, who must make

the threshold determination of arbitrability. For the following reasons, the Court agrees with IA.

### The Court Must Decide Arbitrability Here

The FAA creates a general presumption that courts should resolve the question of arbitrability. *See Contec Corp. v. Remote Sol., Co.*, 398 F.3d 205, 208 (2d Cir. 2005). A court's role in conducting the initial inquiry of whether the parties agreed to arbitrate derives directly from the well-settled principle that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Truck Drivers Local Union No. 807, I.B.T. v. Reg'l Imp. & Exp. Trucking Co.*, 944 F.2d 1037, 1042 (2d Cir. 1991); *accord AT&T Techs. v. Commc'ns. Workers of Am.*, 475 U.S. 643, 648 (1986). In accordance with these directives, the Second Circuit has held that "the issue of arbitrability may only be referred to the arbitrator if there is *clear and unmistakable* evidence from the arbitration agreement…that the parties intended that the question of arbitrability shall be decided by the arbitrator." *Contec*, 398 F.3d at 208; *quoting Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002) (emphasis added). *See also First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (explaining that courts should not presume that the parties agreed to arbitrate arbitrability unless there is "clear and unmistakable evidence" that they did so); *BG Group PLC v. Republic of Arg.*, 134 S. Ct. 1198, 1206 (2014) ("[C]ourts presume that the parties intend courts, not arbitrators, to decide what we have called disputes about 'arbitrability.'"); *Abram Landau Real Estate v. Bevona*, 123 F.3d 69, 72 (2d Cir. 1997) ("When parties disagree about whether they ever entered into an arbitration agreement, a court decides that issue, absent a clear and unmistakable delegation of that authority to an arbitrator.").

Here, the Court does not find any "clear and unmistakable" evidence that IA and PHG intended for disputes regarding arbitrability to be decided by an arbitrator. Article 10 is the only provision in the Agreement which discusses, or even mentions, arbitration. Nowhere in Article 10 does it expressly, clearly, or unmistakably state that issues of arbitrability are to be determined by an arbitrator. PHG maintains, however, that because Article 10 of the Agreement mentions the AAA rules, the parties have delegated any questions of arbitrability to the arbitrator.[4] The Court does not agree, and finds this argument to be an oversimplification of the issues presented here.

Article 10 provides that "where…the Parties refer matters to arbitration, the location of such proceedings shall be Cleveland, OH according to the rules established by the American Arbitration Association." Indeed, the contract language is clear that *where* a matter is referred to arbitration, the arbitration is to be held in Cleveland, Ohio and the AAA rules will apply to the proceedings. However, the entire crux of the parties' dispute here is whether Article 10 requires both IA and PHG to consent *before* any dispute may be referred to arbitration *in the first place*. In fact, IA contends that because the arbitration clause is optional and IA opposes arbitration, there is simply no agreement by the parties to arbitrate at all. Thus, the applicability of the AAA rules to any dispute under the Agreement, including a dispute over arbitrability, begs the question of whether Article 10 is, or is not, a mandatory arbitration provision. *See Dynamic Int'l Airways, LLC v. Air India Ltd.*, 15-CV-7054, 2016 U.S. Dist. LEXIS 89161 (S.D.N.Y. July 8, 2016) (holding that it is

---

[4] AAA Rule 9(a) states that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." (Dkt. No. 9, pg. 7) AAA Rule 9(b) provides that the "arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part." (*Id.*)

the court's responsibility to determine whether the parties have agreed to arbitrate and stating that it "is not aware of any case that stands for the proposition that a court should grant a motion to compel arbitration even though the parties dispute whether the clause in question—the only purported dispute resolution clause in any contract between the parties—actually requires arbitration at all[.]"); *Howsam v. Dean Witter Reynolds*, 537 U.S. 79, 84 (2002) ("[A] gateway dispute about whether the parties are bound by a given arbitration clause...raises a question of arbitrability for the court to decide."); *PaineWebber Inc. v. Bybyk*, 81 F.3d 1193, 1198 (2d Cir. 1996) ("Where the arbitration agreement contains an ambiguity as to who determines [arbitrability], the [FAA's] presumption favoring arbitration is reversed so that the court will ordinarily decide the question.") (emphasis in original). For these reasons, the Agreement's reference to the AAA rules is not "clear and unmistakable" evidence that the parties intended issues of arbitrability to be resolved by the arbitrator.[5]

Defendant cites a number of cases for the proposition that by "incorporating" the AAA rules into their Agreement, PHG and IA delegated any "gateway issues" of arbitrability to an arbitrator. The Court finds these cases to be distinguishable from the

---

[5] In further support of its position that the arbitrator should determine arbitrability here, PHG points to the fact that, on August 29, 2022, AAA made an initial determination that "the minimum filing requirements [had] been met for the matter" and that issues of arbitrability could be raised by IA and PHG after the arbitrator was selected. (Dkt. No. 9-1) This initial determination by AAA appears to be an administrative determination that PHG met the requirements for filing an arbitration claim. (*Id.*) The Court does not consider this finding relevant to the question of whether it is the arbitrator, or the court, who decides arbitrability here. *See Chase Bank USA, N.A. v. Swanson*, 10-CV-06972, 2011 U.S. Dist. LEXIS 11173, at *4 n.2 (N.D. Ill. Feb. 4, 2011) (a determination that a claimant has "met the filing requirements" constitutes an administrative determination of "only whether [a claimant] satisfied the requisite filing requirements" and "does not speak to whether a valid arbitration agreement existed between the parties."); *AT&T Mobility LLC v. Smith*, 11-CV-5157, 2011 U.S. Dist. LEXIS 125367, at *20 (E.D. Pa. Oc. 6, 2011) (despite the fact that the AAA already determined that the demands for arbitration were properly filed, "the arbitrability of [the] dispute is for [the] Court, not AAA, to decide").

situation presented here. More specifically, the cases cited by PHG involve agreements with plainly mandatory arbitration provisions which expressly required that all contractual disputes be submitted to arbitration. *See e.g., Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 844 (6th Cir. 2020) (where plaintiff signed an arbitration agreement "*which require[d] him* to arbitrate a wide array of issues related to his employment," and the agreement incorporated the AAA rules, the issue of whether a specific dispute was arbitrable was properly submitted to the arbitrator) (emphasis added); *Contec*, 398 F.3d at 205 (finding that the parties were bound to provision allowing arbitrator to resolve issues of arbitrability where contract stated that "[i]n the event the parties are unable to arrive at a resolution, *such controversy shall be determined by arbitration* held in the City of Albany, New York in accordance with the Commercial Arbitration Rules of the [AAA]") (emphasis added); *Lapina v. Men Women N.Y. Model Mgmt.*, 86 F. Supp. 3d 277 (S.D.N.Y. 2015) (question of whether non-signatory could compel arbitration was to be determined by the arbitrator where parties' contract stated that "[i]f such dispute cannot be resolved…between us, *such dispute shall be submitted to confidential arbitration* and resolved . . . by a single arbitrator in accordance with the Commercial Arbitration Rules of the American Arbitration Association[.]") (emphasis added). In fact, none of the cases cited by defendant appear to involve a scenario, like this one, where the question presented is whether an agreement to arbitrate all contractual disputes was created or entered into in the first place. *See Blanton*, 962 F.3d at 847-48 (noting that where "the question goes to the very existence of a valid arbitration agreement…the court must resolve the question even if the agreement incorporates the AAA Rules.") (internal

quotations and citations omitted).[6] Indeed, "[i]nasmuch as the arbitrator has no authority of any kind with respect to a matter at issue absent an agreement to arbitrate, the question of whether such an agreement exists and is effective is necessarily for the court and not the arbitrator." *Schnabel v. Trilegiant Corp.*, 697 F.3d 110 (2d Cir. 2012). Because the question presented here goes to the very existence of a valid arbitration agreement, the Court must itself resolve the issue.

### *The Agreement's Plain Language Does Not Require Arbitration*

The Court now turns to analyze whether there is an enforceable and mandatory agreement to arbitrate here, such that IA is compelled to arbitrate the instant dispute. As noted previously, motions to compel arbitration are analyzed pursuant to a summary judgment standard. *Bensadoun*, 316 F.3d at 171. To that end, summary judgment is appropriate where the evidence, viewed in the light most favorable to the non-moving party, shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Vacold, L.L.C. v. Cerami*, 545 F.3d 114, 121 (2d Cir. 2008); *accord* Fed. R. Civ. P. 56(c). Further, the question of whether the parties agreed to arbitrate a certain matter "is governed by state-law principles of contract formation." *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 288 (2d Cir. 2019); *First Option of*

---

[6] Defendant maintains that the Sixth Circuit's decision in *Blanton* is analogous because the threshold issue presented there was whether the parties had an enforceable arbitration provision, yet the Sixth Circuit still determined that arbitrability was to be determined by the arbitrator because of the incorporation of the AAA rules in the contract. *See Blanton*, 962 F.3d at 842. The underlying dispute in *Blanton* was whether a parent company had the right to enforce an arbitration provision in an employment agreement between the company's franchisee and an employee. (*Id.*) The provision in question "required" the arbitration of all employment-related disputes. (*Id.*) Thus, the issue presented in *Blanton* was not whether the employee had agreed to a mandatory arbitration provision, that much was undisputed, but instead whether that mandatory provision could be enforced by the parent company, a non-signatory to the contract. (*Id.*) The Court finds these facts distinguishable from the situation presented here, where there is a dispute as to whether IA entered into a mandatory arbitration agreement in the first place.

*Chicago v. Kaplan*, 514 U.S. 938, 944 (1995). "Where a contract is clear and unambiguous on its face, the intent of the parties must be gleaned from the four corners of the instrument, and not from extrinsic evidence." *RJE Corp. v. Northville Indus. Corp.*, 329 F.3d 310, 314 (2d Cir. 2003). Conversely, a contract term is ambiguous where its meaning "cannot be determined from the four corners of the agreement or where contract language is susceptible to two or more reasonable interpretations." *Potti v. Duramed Pharm., Inc.*, 938 F.2d 641, 647 (6th Cir. 1991). "Whether a contract is ambiguous is a question of law." *RJE Corp.*, 329 F.3d at 314. *See also Whitman v. Foremost Ins. Co.*, 656 F. App'x 75, 78-80 (6th Cir. 2016) (affirming a district court's grant of summary judgment based on unambiguous contract language, and noting that "[w]hen the language of a written contract is clear and unambiguous, Ohio law dictates that the court 'look no further than the writing itself to find the intent of the parties.'") (*citing Westfield Ins. Co. v. Galatis*, 100 Ohio St. 216, 2003 Ohio 5849 (2003).[7]

As noted above, Article 10 provides, in its entirety:

> Disputes between the Parties shall be resolved in accordance with the terms of this contract and where thereunder the Parties refer matters to arbitration, the location of such proceedings shall be Cleveland, Ohio according to rules established by the American Arbitration Association.

(Dkt. No. 1-1) Both PHG and IA contend that the language of Article 10 is clear and unambiguous. However, they have opposite interpretations of its meaning. PHG contends that Article 10 is a binding or mandatory arbitration provision that requires the parties to

---

[7] IA and PHG's Agreement includes a "Governing Law" provision which provides that "the execution, interpretation, and performance of the two Projects in this Contract shall be governed by, and construed in accordance with, the laws of the State of Ohio." (Dkt. No. 1-1, pg. 8) Thus, defendant submits that Ohio law must be used to interpret the meaning of the parties' Agreement. Plaintiff does not appear to dispute this. The Court has considered Ohio law for purposes of analyzing the Agreement here but also notes that the result would be the same if New York law were to be applied to the dispute.

arbitrate all claims arising under the Agreement. PHG further interprets the plain language of Article 10 to state that any contractual disputes may be unilaterally referred to arbitration by either party at any time, and the other party is bound to arbitrate. In contrast, IA contends that Article 10 is a permissive or voluntary arbitration provision. IA interprets the plain language of Article 10 to read that a dispute may only be referred to arbitration jointly, by both parties. IA further submits that because it has not consented to the referral here, it is not bound to arbitrate this dispute. For the following reasons, the Court finds, as a matter of law, that the clear and unambiguous language of the Agreement (1) does not constitute a mandatory arbitration provision; (2) permits arbitration only where both parties refer a dispute; and (3) and does not require IA to arbitrate this dispute.

First, the Court finds that PHG's interpretation of Article 10 is not reasonable. Article 10 begins by stating that "[d]isputes between the Parties shall be resolved in accordance with the terms of this contract." Nowhere in the entire Agreement, outside of Article 10, is arbitration contemplated or discussed. Thus, the first part of Article 10 does not lend any support to defendant's interpretation of the contract language. Article 10 goes on to state that "*where thereunder the Parties refer matters to arbitration*", the arbitration shall be held in Cleveland and in accordance with the AAA Rules. There is no reasonable or common-sense reading of this language to suggest that arbitration of all contractual disputes is mandatory or required under the Agreement. At base, the plain language of Article 10 seems to state only that, *where arbitration occurs*, it will be held in Cleveland, Ohio. It is far from uncommon for sophisticated businesses or companies, like the parties here, to include mandatory arbitration clauses in their commercial contacts. Had IA and PHG meant for the mandatory arbitration of all contractual disputes, they

would have so stated.[8] Moreover, there is no support for defendant's contention that the contract language allows either party to unilaterally refer a dispute to arbitration, and the other party is bound to arbitrate based on a one-sided referral. The preamble of the Agreement expressly defines "Parties" to refer to both IA and PHG "collectively." (Dkt. No. 1-1, pg. 4.) Thus, PHG's interpretation is directly contrary to the plain language of the Agreement, which provides for arbitration in instances where "the Parties" refer matters to arbitration. *See Alexander v. Buckeye Pipeline Co.*, 53 Ohio St. 2d 241 (Mar. 29, 1978) ("[W]here the terms in an existing contract are clear and unambiguous, a court cannot in effect create a new contract by finding an intent not expressed in the clear language employed by the parties.").

Based on this same analysis, the Court finds IA's interpretation of Article 10 to be both reasonable and consistent with the plain language of the Agreement. Indeed, by stating that "where…the Parties refer matters to arbitration", the Agreement does seem to provide some mechanism or option for PHG and IA to arbitrate disputes. Moreover,

---

[8] Indeed, the cases cited by PHG in support of its interpretation of Article 10 involve contract provisions which clearly and plainly mandate the arbitration of all disputes between the contracting parties. *See e.g., Pool Deals, LLC v. United Parcel Serv., Inc.*, 454 F. Supp. 3d 208 (W.D.N.Y. 2020) ("any controversy or claim, whether at law or equity, arising out of or related to the provision of service by UPS…shall be resolved in its entirety by individual---binding arbitration); *Javitch v. First Union Securities, Inc.*, 315 F.3d 619 (6th Cir. 2003) ("I agree that all claims or controversies…shall be submitted to arbitration"); *Huffman v. Hilltop Cos., LLC*, 747 F.3d 391 (6th Cir. 2014) ("Any Claim arising out of or relating to this Agreement, [or] breach hereof, shall be settled by binding arbitration."); *H.H. Franchising Sys. v. Pawson*, 2018 U.S. Dist. LEXIS 4792 (S.D. Ohio Mar. 23, 2018) ("Except as otherwise provided…any and all disputes between the parties…shall be submitted to arbitration."); *Great Earth Cos. v. Simons*, 288 F.3d 878 (6th Cir. 2002) ("any dispute…arising out of, relating to, or referencing this…Agreement or its breach in any way…shall be resolved by submission to binding arbitration"); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 227 (2d Cir. 2016) ("[a]ny dispute or claim related in any way to your use of any Amazon Service…will be resolved by binding arbitration, rather than in court."). Conversely, Article 10 is wholly devoid of any similar or analogous language indicting that all disputes under the Agreement shall, must, or will be resolved through arbitration.

according to its dictionary definition, the word "where" means "in a case, situation, or respect in which." *See* *www.merriam-webster.com/dictionary/where*. Thus, a plain language reading of Article 10 indicates that the word "where" was intended to be synonymous with the words "if" or "when." Stated another way, the use of the word "where" in Article 10 is conditional and does not connote a mandatory requirement that all disputes must be referred to arbitration. Further, as noted above, the Agreement expressly defines the word "Parties" to mean both PHG and IA collectively. With these definitions and common-sense interpretations in mind, the clear and unambiguous language of Article 10 states that disputes under the Agreement are subject to arbitration "where," *meaning if or when*, "the Parties," *meaning both PHG and IA collectively*, refer a matter to arbitration. *See Cheryl & Co. v. Krueger*, 536 F. Supp. 3d 182 (S.D. Ohio 2021) ("words and phrases in a contract should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions."); *Kellogg Co v. Sabhlok*, 471 F.3d 629, 636 (6th Cir. 2006) ("contracts must be construed consistent with common sense").[9]

Here, it is undisputed that only one party, PHG, has referred the instant dispute to arbitration. It is also undisputed that IA opposes arbitration of the dispute. Therefore, pursuant to plain language of Article 10, the Parties have not referred this dispute to arbitration and there is no agreement to arbitrate here. For these reasons, the Court finds

---

[9] The Court rejects defendant's contention that plaintiff's interpretation of the contract language renders Article 10 "superfluous", since the parties could agree to arbitrate any contract dispute at any time, without the need of a specific contractual provision allowing them to do so. The plain meaning of Article 10 provides that where the parties collectively refer matters to arbitration, the proceeding will be in Cleveland, Ohio and in accordance with the AAA rules. By specifying the forum and applicable rules in the event the parties jointly decide to arbitrate, Article 10 is not superfluous or meaningless.

that, as a matter of law, plaintiff cannot be compelled to arbitrate and defendant's motion to compel arbitration and dismiss the complaint should be denied.

### Extrinsic Evidence Does Not Compel Arbitration

For all of the reasons just stated, the Court finds, based on the clear and unambiguous language of Article 10, that there is no agreement to arbitrate the instant dispute and that defendant's motion to compel arbitration and dismiss the complaint should be denied for this reason. However, even if the Court were to find that the contract language was ambiguous, which it does not, the Court would still recommend, for the following reasons, that defendant's motion be denied.

Pursuant to both Ohio and New York state common law, a court may consider extrinsic or parol evidence when the terms of a written contract are ambiguous, in order to determine the intent of the parties. See Olin Corp. v. Ins. Co. of N. Am., 221 F.3d 307, 318 (2d Cir. 2000); Schempp v. GC Acquisition, LLC, 161 F. Supp. 3d 584 (N.D. Ohio 2014) ("Parol, or extrinsic, evidence is only admissible if the terms of the contract are ambiguous, and can only be used to interpret, not contradict, the express language of the contract."). Further, "[w]hen a contract contains uncertain or ambiguous language, preliminary negotiations between the parties may be considered for the purpose of explaining the language." Absalom v. Hess Corp., 2:12-CV-394, 2014 U.S. Dist. LEXIS 203866, at *22 (S.D. Ohio Jan. 2, 2014); quoting Linton v. Linton, 90CA35, 1991 Ohio App. LEXIS 3896 (Ohio Ct. App. Aug. 14, 1991).

Here, IA and PHG agree that if the Court were to find the language of Article 10 to be ambiguous, it would be appropriate for the Court to consider extrinsic or parol evidence to determine the parties' intentions when drafting Article 10. To that end, IA has submitted

evidence in support of its position that the parties never discussed the mandatory arbitration of contractual disputes when negotiating the Agreement. In contrast, PHG submits evidence in an attempt to show that, when drafting the contract, the parties intended for all disputes under the contract to be resolved through mandatory arbitration, based on the referral of either party.[10]

The Court has reviewed the extrinsic evidence in the record and finds that it does not clarify the parties' intent in drafting Article 10. Plaintiff has submitted a declaration from Erin Riley, Chief Financial Officer of IA. (Dkt. No. 26-1) Riley's declaration, and its accompanying exhibits, show that on September 27, 2021, Matthew Bhanij, Chief Executive Officer of PHG, sent the proposed Agreement, which was drafted by defendant, to plaintiff. (*Id.*; Exh. A) Article 10 of the draft Agreement sent by Bhanij and Article 10 of the final Agreement signed by the parties contain identical language. (*Id.*) Thus, there is no indication that Article 10 was changed or edited in any manner from the time defendant presented its draft agreement to plaintiff, to when the parties ultimately executed the final version of the Agreement. (*Id.*) Moreover, emails attached to Riley's declaration show that

---

[10] The Court rejects PHG's contention that additional discovery and an evidentiary hearing is needed before the Court can decide the parties' intent here. In support of its position that the parties intended Article 10 to allow either party to submit disputes to binding arbitration, PHG has submitted declarations from the Chief Executive Officer of PHG. For the reasons discussed *infra*, the Court does not find these declarations persuasive. Moreover, any actual documentary evidence that would support PHG's claim that the parties specifically discussed a mandatory arbitration provision, such as emails or other communications exchanged between the parties during contract negotiations, would be in the possession of PHG. PHG has not submitted any such evidence to the Court, despite the fact that both parties have now had ample opportunities to submit extrinsic evidence. PHG also has failed to identify any specific information, communications, or documents in the possession of IA which would support PHG's contention that the parties intended to include a mandatory arbitration provision in their Agreement. Finally, as explained in detail *supra*, the Court first and foremost recommends that defendant's motion to compel arbitration be denied, as a matter of law, on the basis of the contract language alone. For all of these reasons, the Court finds that neither further discovery nor an evidentiary hearing would serve any purpose here.

PHG and IA expressly communicated or negotiated about various *other* articles of the draft agreement, none of which included Article 10. (*Id.*) For example, IA requested modifications to Article 3 (Contractor and Company Prices), Article 5 (Payment), and Article 6 (Insurance). (*Id.* at Exhs. B, C) Therefore, while there is documentary evidence in the record proving that the parties specifically discussed or negotiated changes to other portions of the Agreement, there is no documentary evidence in the record showing they ever discussed or negotiated Article 10.

Conversely, defendant submits a declaration by Matthew Bhanij, Chief Executive Officer of PHG, dated November 11, 2022, stating that it was his "understanding and belief that the arbitration provision allowed and required either party to submit to binding arbitration all disputes arising from or in connection to the Agreement." (Dkt. No. 22-1) The Court does not find this declaration to be persuasive evidence of the parties' intent. First, the November 22, 2011 declaration was drafted after the contract negotiations, after the execution of the Agreement, and after the initiation of this lawsuit. It contains only Bhanij's self-serving, subjective, and after-the-fact belief as to the meaning of Article 10. Moreover, the November 22, 2011 declaration does not state that Bhanij ever discussed either Article 10, or the mandatory arbitration of contractual disputes in general, with anyone from IA during contract negotiations. Moreover, PHG has not submitted any documentary evidence, in the form of contemporaneous emails or other communications, that would corroborate Bhanij's statements that either he or anyone else intended there to be mandatory arbitration of all contractual disputes, which could be initiated by either party. *Nycal Corp. v. Inoco P.L.C.*, 988 F. Supp. 296, 302 (S.D.N.Y. 1997) ("[W]hen resolving disputes concerning the meaning of ambiguous contract language,

unexpressed subjective views have no proper bearing...[o]nly the parties' objective manifestations of intent are considered."); *Nilavar v. Osborn*, 127 Ohio App. 3d 1, 711 N.E.2d 726, 733 (2nd Dist. Ohio 1998) ("under contract law, courts properly consider only objective manifestations of intent"); *Restatement (Second) of Contracts* § 212, comment (a) ("[T]he relevant intention of a party is that manifested by him rather than any different undisclosed intention.").[11]

On balance, the Court finds that the extrinsic evidence in the record demonstrates that the parties did not discuss, prior to executing the Agreement, either the meaning of Article 10 or whether contractual disputes would be subject to mandatory arbitration. Stated another way, the Court finds that there is no extrinsic evidence in the record that either clarifies any purported ambiguities in Article 10 or proves whether the parties

---

[11] In its final post-hearing brief submitted to the Court on January 6, 2023, PHG submits a supplemental declaration by Bahnij, dated January 4, 2023. Therein, Bahnij states, *for the very first time*, that, during contract negotiations, he "specifically conveyed" to representatives from IA that "the purpose and intent of Article 10 was a binding arbitration provision whereby both PHG and [IA] agreed that any dispute referred by either party would be subject to [mandatory] arbitration." (Dkt. No. 29-1) The Court does not credit any of the statements contained in this declaration. First, it defies credulity that Bahnij and PHG, *the authors of the Agreement*, would have specifically expressed the desire for a mandatory arbitration provision during contract negotiations and then both drafted and consented to Article 10 in the manner it appears in the Agreement. Second, PHG submits no contemporaneous emails or other communications between the parties to corroborate Bahnij's statements. In light of the fact that IA has submitted emails showing that other provisions of the Agreement were expressly negotiated in writing, the lack of such documentary evidence as to Article 10 is especially curious. Finally, PHG included the supplemental declaration in its final brief to the Court, such that IA had no opportunity to reply or to submit contrary evidence. Indeed, PHG waited until after the submission of four prior briefs and one prior declaration by Bahnij before electing to submit this purported direct evidence of defendant's behavior during contract negotiations. *See Tolliver v. McCants*, 05 Civ. 10840, 2009 U.S. Dist. LEXIS 44796, *9-10 (S.D.N.Y. May 26, 2009) (declining to consider evidence known to a party well before the pending summary judgment motion and arguments made for the first time in a reply brief). For all of these reasons, the Court finds the January 4, 2023 declaration to be self-serving and wholly unsupported by any credible evidence in the record, and the Court has declined to consider it at all in evaluating the instant dispute.

intended for the arbitration clause to be binding and based on the referral of either party, or permissive and based on the joint referral of both parties.

PHG contends that if the Court cannot discern the meaning of Article 10 through the consideration of extrinsic evidence, the presumption in favor of arbitration governs this dispute and the motion to compel arbitration should be granted. To that end, defendant submits that federal courts regularly hold that any doubts concerning the applicability or scope of an arbitration provision should be resolved in favor of arbitration. *See e.g., Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) ("Courts are to examine the language of the contract in light of the strong federal policy in favor of arbitration…[l]ikewise, any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor or arbitration."). The Court does not find that this presumption should be applied here.

The FAA reflects that "arbitration is a matter of contract" and that contracts must be enforced "according to their terms." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Thus, "while doubts concerning the *scope* of an arbitration clause should be resolved in favor of arbitration, the presumption does not apply to disputes concerning whether an agreement to arbitrate *has been made.*" *See Goldman, Sachs & Co. v. Golden Empire Sch. Fin. Auth.*, 764 F.3d 210, 215 (2d Cir. 2014) (emphasis added). The Supreme Court recently reaffirmed this distinction in *Morgan v. Sundance Inc.*, when it explained that "[t]he federal policy is about treating arbitration contracts like all others, not about fostering arbitration." 142 S. Ct. 1708 (2022). Indeed, even before *Morgan*, the Supreme Court held that while the FAA places arbitration agreements "upon the same footing as other contracts", *Scherk v. Alberto-Culver Co.*, 417 U.S. 506 (1974), it "does not require

20

parties to arbitrate when they have not agreed to do so." *Volt Info. Scic., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 478 (1989).

As explained in detail above, the Court finds that the clear and unambiguous language of the Agreement does not require arbitration of this dispute, nor does it reflect that IA entered into a mandatory and binding arbitration agreement with PHG. Moreover, even if the Court were to consider the contract language ambiguous, there is no extrinsic evidence proving that the parties intended Article 10 to require the mandatory arbitration of all contractual disputes based on the referral of only one party to the Agreement. Indeed, "the first principle that underscores all of [the Supreme Court's] arbitration decisions [is that] arbitration is strictly a matter of consent." *See Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407 (2019); *accord Granite Rock Co v. Teamsters*, 561 U.S. 287, 299 (2010). Because there is no contractual language or extrinsic evidence showing that plaintiff actually consented to a binding arbitration provision in its contract with PHG, the Court will not impose such a requirement on plaintiff in this case. *See Lloyd v. J.P. Morgan Chase & Co.,* 791 F.3d 265, 270 (2d Cir. 2015) "If an arbitration clause is best construed to express the parties' intent not to arbitrate certain disputes, that intent controls and

cannot be overridden by the presumption of arbitrability.").[12]

For all of these reasons, the Court recommends that defendant's motion to compel arbitration and to dismiss and/or stay the complaint be denied.

## MOTION FOR A PRELIMINARY INJUNCTION

To obtain a preliminary injunction, the movant is required to show "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *UBS Fin. Srvcs v. West Virginia University*, 660 F.3d 643, 648 (2d Cir. 2014). The general purpose of a preliminary injunction "is to preserve the status of the parties until a determination on the merits of the [movant's] case can be made." *RMP Capital Corp. v. Bam Brokerage, Inc.*, 21 F. Supp. 3d 173, 182 (E.D.N.Y. 2014) (internal citations omitted). District courts have "wide discretion in determining whether to grant a preliminary injunction." *Pivotal Payments, Inc. v. Phillips*, 14-4910, 2014 U.S. Dist. LEXIS 164823 (E.D.N.Y. Nov. 25, 2014).

---

[12] Defendant submits that this Court should follow the holding of *Guild Associates, Inc. v. Xichun Zhou*, 2:18-CV-36, 2019 WL 4385694, at *1 (S.D. Ohio Sept. 13, 2019). There, the parties' dispute centered on whether an arbitration clause was mandatory or permissive, and the Ohio Court found that the contract language was reasonably susceptible to both interpretations. The Ohio Court ultimately resolved the ambiguity in favor of arbitration, in part, because arbitration "[e]ffectuat[ed] the purpose of the FAA[.]" *Id.* at *2. The Court finds *Guild Associates* distinguishable from facts presented here. In that case, the employer, Guild Associates, drafted the agreement at issue, which specifically stated that "*Guild Associates encourages*" that all employment related disputes "shall be resolved by final, binding arbitration." The agreement was signed by the employee, who later sought to compel arbitration regarding a dispute with the employer over misappropriation of trade secrets. The Ohio Court reasoned that, by both drafting the agreement and adopting the word "encourages", Guild Associates "expressly agreed to and wanted [arbitration] from the start." *Id.* It is undisputed that PHG, not IA, drafted the Agreement at issue here. Thus, unlike the plaintiff in *Guild Associates*, it cannot be stated or inferred that IA either agreed to or wanted arbitration "from the start." For these reasons, the Court does not find the holding of *Guild Associates* to be either analogous or persuasive here and the Court will not force IA to arbitrate when there is no indication in the record that they ever agreed to do so.

The Court finds that a preliminary injunction is appropriate here. IA's complaint requests (1) a declaratory judgment that IA is not mandated to arbitrate any dispute, including the instant dispute, with PHG; and (2) a permanent injunction dismissing the arbitration proceeding currently pending before AAA. For all of the reasons just stated, the Court has found that an enforceable agreement to arbitrate does not exist between the parties here and that IA should not be compelled to arbitrate. Thus, the Court finds that plaintiff has demonstrated a likelihood of success on the merits with respect to its request for a declaratory judgment and permanent injunction preventing or enjoining arbitration of the instant contractual dispute. At a minimum, plaintiff has raised sufficiently serious questions going to the merits of the lawsuit to make plaintiff's claim a fair ground for litigation.

To establish irreparable harm, the party seeking preliminary injunctive relief must show "that there is continuing harm which cannot be adequately redressed by final relief on the merits and for which money damages cannot provide adequate compensation." *Allstate Ins. Co. v. Elzanaty*, 929 F. Supp. 2d 199, 221 (E.D.N.Y. 2013). Irreparable harm is "harm to [a party's] legal interests that could not be remedied after a final adjudication." *WPJX, Inc. v. IVI, Inc.*, 691 F.3d 275, 285 (2d Cir. 2012). Moreover, the Second Circuit has recognized that "being forced to arbitrate a claim one did not agree to arbitrate constitutes an irreparable harm for which there is no adequate remedy at law." *UBS Sec. LLC v. Voegeli*, 405 Fed. Appx. 550 (2d Cir. Jan. 4, 2011).

Here, PHG's demand for arbitration has been filed and accepted by AAA. Should the request for a preliminary injunction be denied, IA may likely be required to proceed with the arbitration of this dispute while its lawsuit requesting that the arbitration be

23

enjoined is still pending before this Court. Such an outcome risks IA being forced to arbitrate a claim it never agreed to arbitrate in the first place and could result in irreparable harm. *See Voegeli*, 405 Fed. Appx. at 551 ("Because [plaintiff] is not legally obligated to arbitrate [the] claims, and the lack of an injunction would result in [plaintiff] effectively being required to do so, [plaintiff] satisfied the 'irreparable harm' and 'lack of adequate remedy at law' requirements for an injunction."); *Merrill Lynch v. Optibase*, 337 F.3d at 129 ("the movant would be irreparably harmed by being forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable."); *Maryland Cas. Co. v. Realty Advisory Bd. on Labor Rels.*, 107 F.3d 979 (2d Cir. 1997) (affirming district court's granting of a preliminary injunction in action to enjoin arbitration proceeding since "the time and resources [plaintiff] would expend in arbitration is not compensable by any monetary award of attorney's fees or damages pursuant to the provision of the Agreement or the Arbitration Act.").[13]

---

[13] Defendant cites cases for the proposition that requiring a party to engage in arbitration does not constitute irreparable harm. However, these cases are distinguishable in that they involve situations, unlike this one, where the court determined that the parties did in fact agree to arbitrate all contractual disputes. The Court has found the opposite here. *See e.g., Lawrence v. Wilder Richman Secs. Corp.*, 417 F. App'x 11, 14 (2d Cir. 2010) (a party does not suffer a cognizable injury by "being compelled to engage in arbitration to which he has contractually agreed"); *522 W. 38th St. LLC v. N.Y. Hotel & Motel Trades Council*, 517 F. Supp. 2d 687, 688 (S.D.N.Y. 2007) (parties conceded that there was an arbitration agreement covering the subject matter of the underlying dispute); *Med. Shoppe Int'l v. Mitsopoulos*, 2004-5207, 2006 U.S. Dist. LEXIS 116122, at *7 (E.D.N.Y. May 5, 2006) ("[W]here there is a valid agreement to arbitrate, no irreparable harm results from compelling the resisting party to arbitrate.").

For these reasons, the Court recommends that plaintiff's motion for a preliminary injunction staying or enjoining the arbitration proceeding be granted.[14]

## **CONCLUSION**

For the foregoing reasons, it is recommended that the District Court deny defendant's motion to compel arbitration and to dismiss, or in the alternative stay, the complaint (Dkt. No. 8) and it is recommended that the District Court grant plaintiff's motion for a preliminary injunction (Dkt. No. 12).

Pursuant to 28 U.S.C. §636(b)(1), it is hereby **ORDERED** that this Report and Recommendation be filed with the Clerk of Court.

Unless otherwise ordered by Judge Sinatra, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and W.D.N.Y. L. R. Civ. P. 72.   Any requests for an extension of this deadline must be made to Judge Sinatra.

***Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE***

---

[14] Defendant submits that if plaintiff's motion for a preliminary injunction is granted, the Court should require plaintiff to post a bond pursuant to Rule 65 of the Federal Rules of Civil Procedure. The Court finds that there is no reason to require plaintiff to post security, because there is no risk of a monetary loss of damages to defendant while the injunction is pending. *See Maryland Cas. Co.*, 107 F.3d at 985 (affirming district court's decision not to a require bond after granting a preliminary injunction in action to enjoin arbitration proceeding because the "issue before the district court concerned the proper forum, and not preserving an award of damages."); *Doctor's Assoc. v. Stuart*, 85 F.3d 975 (2d Cir. 1996) (where purpose of the injunction was to preserve jurisdiction, the district court did not abuse its discretion in dispensing with the bond). Should defendant ultimately prevail, the dispute would go to arbitration and, were the arbitrator to rule in its favor, the present injunction does not prevent defendant from fully recovering any monetary award it may be entitled to.

***RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.*** *See Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See* Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co., 840 F.2d 985, 990-91 (1st Cir. 1988).

*Finally, the parties are reminded that, pursuant to W.D.N.Y.  L.R.Civ.P.  72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority."* ***Failure to comply with these provisions may result in the District Court's refusal to consider the objection.***

SO ORDERED.

Dated:       June 5, 2023
             Buffalo, New York

MICHAEL J. ROEMER
United States Magistrate Judge